IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| AIG PROPERTY CASUALTY COMPANY,<br><br>                    Plaintiff,<br><br>        vs.<br><br>NEIL ANENBERG,<br><br>                    Defendant. | Civ. No. 19-00679 JMS-WRP<br><br>ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT, ECF NOS. 25 & 36 |

**ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT, ECF NOS. 25 & 36**

## I.  INTRODUCTION

The court faces cross-motions for summary judgment in this insurance declaratory relief action.  Plaintiff AIG Property Casualty Company ("Plaintiff" or "AIG") moves for summary judgment, ECF No. 25, seeking a declaration that it has no duty to defend or indemnify its insured Defendant Neil Anenberg ("Defendant" or "Anenberg") against an underlying complaint, *Ross v. Anenberg* (Civil No. 19-1-0251(2)), which is pending in the Circuit Court of the Second Circuit, State of Hawaii (the "underlying action" or "*Ross*").  Anenberg opposes AIG's motion, and has filed a Counter-motion for Partial Summary Judgment, seeking the opposite—a declaration that AIG has a duty to defend him in *Ross*.

1

ECF No. 36.  Based on the following, the court GRANTS the motions in PART and DENIES them in part.

AIG has no duty to indemnify Anenberg as to the claim for punitive damages against him in *Ross*, but AIG otherwise has a duty to defend.  Applying Hawaii law, there is a potential for coverage as to count four of the underlying complaint, which alleges a claim against Anenberg for negligent infliction of emotional distress ("NIED").  In particular, there is a potential for NIED liability as to the actions described in paragraph eight of the underlying complaint describing Anenberg's actions (and as seen in the security video) before he changed his shirt.  Although much of the *Ross* complaint alleges facts and causes of action that would likely be barred by AIG's intentional acts exclusion, it nevertheless remains *possible* for a fact-finder in *Ross* to find Anenberg liable for NIED.  *See, e.g.*, *Burlington Ins. Co. v. Oceanic Design & Constr., Inc.*, 383 F.3d 940, 944 (9th Cir. 2004) (reiterating that when "a suit raises a potential for indemnification liability of the insurer to the insured, the insurer has a duty to accept the defense of the entire suit even though other claims of the complaint fall outside the policy's coverage") (quoting *Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co.*, 76 Haw. 166, 169, 872 P.2d 230, 233 (1994)).  Likewise, the "sexual molestation/misconduct" exclusions do not bar a duty to defend.

## II.  BACKGROUND

**A.    Factual Background**

### 1.    *Allegations of the Underlying State Court Complaint*

The underlying state court complaint alleges that on March 14, 2019,

the plaintiff in the underlying action ("Ross" or "Mrs. Ross") was shopping at the

Mahana Market, a store in the Montage Hotel located on Maui.  *See* ECF No. 1-1

at PageID #24.  Ross entered a "private dressing area at the rear of the Market[.]"

*Id.* at PageID #25.  "The dressing area consisted of a private space surrounded by a

curtain to secure the privacy of occupants[.]"  *Id.*  Ross "pulled the curtain shut to

protect her privacy as she tried on the Market's clothing."  *Id.*  The underlying

complaint then alleges two paragraphs—paragraphs eight and nine—of substantive

factual allegations against Anenberg, set forth here in full:

> 8.  Shortly after Mrs. Ross entered and secured the
> dressing area, [Anenberg] entered the Market with
> various family members.  [Anenberg] selected a shirt and
> then approached the dressing area to try it on.  Mrs. Ross
> was still in the dressing area.  [Anenberg] tried to enter
> the secure dressing area but Mrs. Ross announced her
> presence and told him not come in.  Even after
> [Anenberg] was made aware of Mrs. Ross' presence in
> the private dressing area, however, he engaged in
> assaultive conduct by rummaging, feeling and grabbing
> the curtain attempting to make physical contact with Mrs.
> Ross.  A Market associate, who became aware of
> [Anenberg's] attempt to enter the private change area
> while it was occupied, offered [Anenberg] an alternate
> location in an apparent storage area, for him to try on the
> shirt. [Anenberg] then entered this storage area closing

the door behind him allowing him to change into the shirt in privacy.

*Id.*

> 9.  After [Anenberg] changed his shirt he opened the door to the storage area and came out showing the shirt to his family.  He then looked to see if Mrs. Ross was still in the secure and private chang[ing] area, and she was. [Anenberg] then reentered the storage area and while still wearing the Market's shirt, obtained his phone opening an application on it.  [Anenberg] then amplified his prior assaultive conduct by approaching the private area where Mrs. Ross was protected from view by a curtain.  Once he arrived at the closed curtain [Anenberg] knelt down and with phone in hand reached under the privacy curtain taking video and/or photos of Mrs. Ross while she was changing clothes.  Mrs. Ross observed [Anenberg's] phone emerge from under the privacy curtain and could see that the display was on.  She screamed in horror as she lurched away from [Anenberg's] invasive and offensive acts violating her privacy.  [Anenberg] stood up and left the area laughing while he looked at his phone.

*Id.* at PageID #25-26.  The hotel maintained a video system that captured the events described in paragraphs eight and nine (and the court has reviewed the security video, as proffered by AIG).  *Id.* at PageID #26; ECF No. 35.

Based on those substantive factual allegations, *Ross* alleges five counts against Anenberg: (1) Invasion of Privacy by Intrusion Upon Seclusion, (2) Assault, (3) Intentional Infliction of Emotional Distress, (4) Negligent Infliction of Emotional Distress, and (5) Loss of Consortium.[1]  It seeks "statutory,

---

[1] Mrs. Ross' husband is also a plaintiff in *Ross*.

4

general, special, and punitive damages against [Anenberg] in an amount to be

proven at trial," as well as "attorneys' fees, costs, expenses, and prejudgment

interest[.]"  *Id.* at PageID #30.

> **2.      Discovery in the Underlying Action**

        Ross gave a deposition in the underlying action.  She testified about

the incident, in part, as follows:

> . . . the initial ruffling [of the curtain] happened, and then
> I said don't do that, you know.  I said I'm in here, I'm in
> here.  And then the daughter had mentioned to
> [Anenberg] that he couldn't do that.  Then he reached
> around to the other side and ruffled it again saying, oh —
> and I said — just kind of making some weird gestures
> and weird things — and I said, you don't want to spoil
> your breakfast, don't come in here, trying to laugh it off
> and make a joke of an uncomfortable situation.  And he
> then made some sort of like suggestive, almost creepy
> tone comment like, well, you know, maybe I do, kind of
> thing. . . .  And then the wife said, you can't say
> something like that, that's like a "me too" moment.  And
> we kind of giggled and I just tried to shut it down very
> quickly and said, guys, enjoy your day, by, like have a
> good . . . day, you know, enjoy your birthday kind of
> thing[.]

ECF No. 37-3 at PageID #542.  She had given a similar answer to an interrogatory

earlier, indicating in part:

> [Anenberg] approached the dressing area I was changing
> in and began ruffling the curtains.  He sarcastically
> asked, "oh, is this a changing room?" I said, "yes, don't
> come in here." . . . .  I then made a joke trying to lighten
> the situation saying, "don't want to spoil your breakfast,"
> to [the] group.  The man then said something like, "well

> maybe I do want to come in," sort of suggestive and
> creepy.  At that point the whole family started saying
> stuff to him to shut him up. . . . His wife then remarked
> that I'm funny cool about the whole thing.

ECF No. 37-4 at Page ID #549-50.

### 3. *AIG's Insurance Policies*

Anenberg is a named insured under an AIG homeowners policy and an AIG excess liability policy, both effective from September 23, 2018 to September 23, 2019—a coverage period that includes the events at issue in *Ross*. *See* ECF No. 26-4 at PageID #307.  AIG's homeowners policy with Anenberg provides, in relevant part:

> **A.  Insuring Agreement**
> We will pay **damages** an **insured person** is legally
> obligated to pay for **personal injury** or **property
> damage** caused by an **occurrence** covered by this
> policy anywhere in the world, unless stated
> otherwise or an exclusion applies.

ECF No. 26-8 at PageID #334.  It contains the following relevant exclusions:

> **E.  Exclusions**
> This policy does not provide coverage for liability,
> defense costs or any other cost or expense for:
> . . . .
> **9.**  Sexual Molestation or Corporal Punishment
>      **Personal injury** arising out of any actual,
>      alleged or threatened by any person:
>      **a**.  Sexual molestation, misconduct or
>           harassment;
>      **b**.  Corporal punishment; or
>      **c**.  Sexual, physical or mental abuse.
> . . . .

**17.**   Intentional Acts
**Personal injury** or **property damage** resulting from any criminal, willful, intentional or malicious act or omission by any person.  We also will not cover claims for acts or omissions of any person which are intended to result in, or would be expected by a reasonable person to cause**, property damage** or **personal injury**.  This exclusion applies even if the injury or damage is of a different kind or degree, or is sustained by a different person, than expected or intended.  This exclusion does not apply to **bodily injury** if the **insured person** acted with reasonable force to protect any person or property.

*Id.* at PageID #337-38.  And it defines relevant terms as follows:

**Bodily Injury** means bodily harm, including resulting sickness or disease, required care, loss of services or death.
. . . .
**Occurrence** means:
**a.**   A loss or an accident, to which this insurance applies, including continuous or repeated exposure to substantially the same general harmful conditions, which occurs during the Policy Period and results in **personal injury** or **property damage**; or
**b.**   An offense, to which this insurance applies, including a series of related offenses, committed during the Policy Period that results in **personal injury** or **property damage**.
. . . .
**Personal Injury** means injury, including bodily or mental harm or resulting death rising out of any of the following acts:
**a.**   **Bodily injury**;
. . .

   **c.**  Shock, emotional distress, mental injury;

   **d.**  Invasion of privacy;

*Id*. at PageID #325-26.

   AIG's excess liability policy contains a similar "intentional act"

exclusion providing as follows:

> This insurance does not provide coverage for liability,
> defense costs or any other cost or expense:
> . . . .
> **8.**  Intentional Act
>    Arising out of any criminal, willful, fraudulent,
>    dishonest, intentional or malicious act or omission
>    by any person, or the gaining of any profit or
>    advantage to which an **insured person** is not
>    entitled.  We will not cover any amount for which
>    the **insured person** is not financially liable or
>    which are without legal recourse to the **insured**
>    **person**; We also will not cover claims for acts or
>    omissions of any person which are intended to
>    result in, or would be expected by a reasonable
>    person to cause, **property damage** or **personal**
>    **injury**.  This exclusion applies even if the injury or
>    damage is of a different kind or degree, or is
>    sustained by a different person, than expected or
>    intended.  This exclusion does not apply to **bodily**
>    **injury** if the **insured person** acted with reasonable
>    force to protect any person or property.

ECF No. 26-9 at PageID #389-90.

   Finally, like the homeowners policy, the excess liability policy also

excludes coverage for "sexual misconduct" as follows:

> **As respects Excess Liability, the following also**
> **applies**:

> This insurance does not provide coverage for liability, defense costs or any other cost or expense:
> . . . .
> **3.**   Sexual Misconduct
> Arising out of any actual, alleged or threatened:
> **a.**   Sexual misconduct, molestation or harassment;
> **b.**   Corporal punishment; or
> **c.**   Sexual, physical or mental abuse.

*Id.* at PageID #391.

## B.   Procedural History

After *Ross* was filed on August 5, 2019, AIG agreed to provide Anenberg with defense against the suit, subject to a reservation of rights to disclaim coverage and to file a declaratory relief action to determine AIG's rights and duties under the homeowners and excess liability policies. *See* ECF No. 26-12 at PageID #442.[2]

Accordingly, on December 20, 2019, AIG filed the present declaratory relief action under 28 U.S.C. § 2201 against Anenberg, with federal jurisdiction based upon diversity of citizenship. ECF No. 1. AIG is a Pennsylvania corporation with a principal place of business in New York, Anenberg is a citizen of California, and over $75,000 is in controversy. *See id.* at PageID #2.

---

[2] AIG had previously denied coverage when presented with pre-suit demands from Ross. *See* ECF No. 26-10.

On April 29, 2020, AIG filed its Motion for Summary Judgment, seeking a declaration that it has no duty to defend or indemnify Anenberg as to all claims asserted in *Ross*.  ECF No. 25 at PageID #241.  On May 25, 2020, Anenberg filed an Opposition and a Counter-motion for Partial Summary Judgment, seeking a declaration that AIG owes Anenberg a defense in *Ross*, with AIG's corresponding indemnification duties (if any) to await completion of *Ross*. *See* ECF No. 36-1 at PageID #527.  On June 1, 2020, AIG filed its Reply and Opposition to the Counter-motion, ECF No. 39, and on June 8, 2020, Anenberg filed his Reply as to the Counter-motion, ECF No. 41.  After hearing the motions on June 15, 2020, ECF No. 42, the court requested supplemental briefing, ECF No. 43, which the parties filed on July 1, 2020, ECF Nos. 44, 45.

## III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Federal Rule of Civil Procedure ("FRCP") 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323).  "When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248).  When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence

11

of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

## IV.  DISCUSSION

Initially, AIG argues (and Anenberg does not dispute) that it owes no coverage duties to Anenberg for the punitive damages alleged in *Ross*.  *See* Haw. Rev. Stat. ("HRS") § 431:10-240 ("Coverage under any policy of insurance issued in this State shall not be construed to provide coverage for punitive or exemplary damages unless specifically included.").  Anenberg agrees that the AIG insurance policies at issue here do not specifically include coverage for punitive damages.  *See* ECF No. 36-1 at PageID #511 n.5.  Accordingly, the court GRANTS AIG's motion to that limited extent.

Next, AIG does not dispute that *Ross* could constitute a "loss" or "offense" resulting in "personal injury" within the meaning of applicable policy provisions.  *See* ECF No. 26-8 at PageID #325 (defining "occurrence" as, among other things, "an offense, to which this insurance applies, . . . that results in personal injury").  Rather, the primary focus in these motions is on two exclusions—the "intentional act or expected injury" and "sexual molestation/misconduct" exclusions in the homeowners and excess liability policies.  But before turning to these exclusions, the court sets forth applicable insurance principles under Hawaii law.

12

## A.    Framework for Construing Insurance Contracts

"Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, restricted, or modified by any rider, endorsement or application attached to and made a part of the policy."  HRS § 431:10-237.  Thus, under Hawaii law, courts must look to the language of the insurance policy to determine the scope of an insurer's duties.  *See Sentinel Ins. Co. v. First Ins. Co. of Haw.*, 76 Haw. 277, 287, 875 P.2d 894, 904 (1994); *see also Hawaiian Ins. & Guar. Co. v. Fin. Sec. Ins. Co.*, 72 Haw. 80, 87, 807 P.2d 1256, 1260 (1991) ("In the context of insurance coverage disputes, we must look to the language of the insurance policies themselves to ascertain whether coverage exists, consistent with the insurer and insured's intent and expectations."); *Burlington Ins. Co.*, 383 F.3d at 945 ("In Hawaii, the terms of an insurance policy are to be interpreted according to their plain, ordinary, and accepted sense in common speech.").

Insurance policies must nevertheless be construed "in accordance with the reasonable expectations of a layperson."  *Hawaiian Isle Adventures, Inc. v. N. Am. Capacity Ins. Co.*, 623 F. Supp. 2d 1189, 1194 (D. Haw. 2009) (citing *Dawes v. First Ins. Co. of Haw.*, 77 Haw. 117, 121, 883 P.2d 38, 42 (1994)).  Insurance contracts are "contracts of adhesion" and "must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer."  *Guajardo v.*

13

*AIG Haw. Ins. Co.*, 118 Haw. 196, 202, 187 P.3d 580, 586 (2008) (citing *Dairy Rd.*

*Partners v. Island Ins. Co.*, 92 Haw. 398, 411-12, 992 P.2d 93, 106-07 (2000)

(internal citations, quotation marks, brackets, and ellipses omitted)).

        An insurance company's duty to defend is broader than its duty to

indemnify and "arises whenever there is the mere potential for coverage."

*Commerce & Indus. Ins. Co. v. Bank of Haw.*, 73 Haw. 322, 326, 832 P.2d 733,

735 (1992) (citations omitted).  "In other words, the duty to defend 'rests primarily

on the *possibility* that coverage exists.  This possibility may be remote but if it

exists[,] the [insurer] owes the insured a defense.'"  *Dairy Road Partners*, 92 Haw.

at 412, 992 P.2d at 107 (quoting *Standard Oil Co. of Cal. v. Hawaiian Ins. &*

*Guar. Co.*, 65 Haw. 521, 527, 654 P.2d 1345, 1349 (1982)).

        In determining whether an insurer has a duty to defend, Hawaii courts

apply the "complaint allegation rule," where

> [t]he focus is on the alleged claims and facts.  The duty to
> defend "is limited to situations where the pleadings have
> alleged claims for relief which fall within the terms for
> coverage of the insurance contract.  'Where pleadings fail
> to allege any basis for recovery within the coverage
> clause, the insurer has no obligation to defend.'"

*Burlington Ins. Co.*, 383 F.3d at 944-45 (quoting *Hawaiian Holiday Macadamia*

*Nut Co. v. Indus. Indem. Co.*, 76 Haw. 166, 169, 872 P.2d 230, 233 (1994)).  "In

determining whether coverage exists under a liability policy, Hawaii courts do not

look at the way a litigant states a claim, but rather at the underlying facts alleged in

the pleadings." *Allstate Ins. Co. v. Miller*, 732 F. Supp. 2d 1128, 1134 (D. Haw. 2010) (citing *Bayudan v. Tradewind Ins. Co.*, 87 Haw. 379, 387, 957 P.2d 1061, 1069 (Haw. App. 1998)) (other citation omitted); *see also Dairy Road Partners*, 92 Haw. at 417, 992 P.2d at 112 ("[W]hen the *facts* alleged in the underlying complaint unambiguously exclude the possibility of coverage, conclusory assertions contained in the complaint regarding the legal significance of those facts (such as that the facts as alleged demonstrate 'negligent' rather than 'intentional' conduct) are insufficient to trigger the insurer's duty to defend.").

Moreover, "where the insured tenders his or her defense in a lawsuit in which the complaint does not clearly and unambiguously assert a covered claim, the insurer, as a precondition to refusing the tender on the ground that there is no possibility of coverage, must nevertheless conduct a reasonable investigation to ensure that the facts of the case do not obligate it to defend the insured." *Dairy Road Partners*, 92 Haw. at 414-15, 992 P.2d at 109-10.  "[A]n insurer must look beyond the effect of the pleadings and must consider any facts brought to its attention or any facts which it could reasonably discover in determining whether it has a duty to defend. . . . The possibility of coverage must be determined by a good-faith analysis of all information known to the insured or all information reasonably ascertainable by inquiry and investigation." *Id.* (quoting *Standard Oil Co.*, 65 Haw. at 527, 654 P.2d at 1349).

15

To obtain a declaration at summary judgment that it has no duty to defend, an insurer has the burden of proving that there is "no genuine issue of material fact with respect to whether a *possibility* exist[s]" that the insured will incur liability for a claim covered by the policy. *Id.* at 412, 992 P.2d at 107. In other words, an insurer must prove that it would be impossible for the underlying party in the underlying lawsuit to prevail against an insured on a claim covered by the Policy. *See id.* at 412-13, 992 P.2d at 107-08. "All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured." *Id.* at 412, 992 P.2d at 107 (citations omitted).

"Unlike a coverage provision, an exclusion is read narrowly." *Gemini Ins. Co. v. ConstRX Ltd.*, 360 F. Supp. 3d 1055, 1068 (D. Haw. 2018) (citations omitted). "The insurer has the burden of establishing the applicability of any exclusion." *Id.* (citation omitted). "[W]hen insurance policies contain exclusions for intentional conduct and expected injuries, those exclusions are limited." *Weight v. USAA Cas. Ins. Co.*, 782 F. Supp. 2d 1114, 1128 (D. Haw. 2011) (citation omitted).

**B.    Application of Principles to the Exclusions**

**1.    *Intentional Acts or Expected Injuries Exclusion***

To reiterate, the homeowners policy excludes "intentional acts," defined as:

> **Personal injury** or **property damage** resulting from any criminal, willful, intentional or malicious act or omission by any person.  *We also will not cover claims for acts or omissions of any person which are intended to result in, or would be expected by a reasonable person to cause,* **property damage** or **personal injury**.  This exclusion applies even if the injury or damage is of a different kind or degree, or is sustained by a different person, than expected or intended.

ECF No. 26-8 at PageID #338 (italicized emphasis added).

AIG argues that the allegations of *Ross*, combined with a viewing of the security video, entitle it to a declaration that it owes no coverage duties to Anenberg.  Its position is that, under the language of the exclusion, any "personal injury" that Anenberg caused Ross necessarily was caused intentionally or "would be expected by a reasonable [tortfeasor]."  ECF No. 25-1 at PageID #264.  And to have no duty to defend, AIG must establish that it is impossible for Anenberg to be found liable to Ross for any claim requiring indemnification from AIG.  *See, e.g.*, *Dairy Road Partners*, 92 Haw. at 412-13, 992 P.2d at 107-08 ("[The insurer] was required to prove that it would be *impossible* for the [plaintiffs] to prevail against [the insured] in the underlying lawsuits on a claim covered by the policies.  Conversely, [the insured's] burden with respect to its motion for summary judgment was comparatively light, because it had merely to prove that a *possibility* of coverage existed.") (citation omitted).

Anenberg disagrees (as does the court, after much deliberation).  In particular, when considering count four of *Ross*, it is at least *possible* for a factfinder in *Ross* to find Anenberg liable for negligently inflicting damages that were not caused "intentionally" or that were not "expected" at all within the meaning of the exclusion.  Count four, incorporating both paragraphs eight and nine of the *Ross* complaint, as set forth in full above, alleges NIED in part as follows:

> 28.  [Anenberg's] conduct was unreasonable and negligent and [Anenberg] knew, or in the exercise of reasonable diligence, should have known that his conduct would cause injury and harm to the [Rosses].
>
> 29.  As a direct and proximate result of [Anenberg's] wrongful, intentional, and illegal conduct, [the Rosses] have suffered and will suffer damages, including severe and extreme emotional distress, shame, mortification, anger embarrassment, humiliation, feelings of being violated, pain and suffering, physical injuries, physical sickness, loss of consortium, expenses, attorneys' fees, and other damages, in an amount to be proven at trial.

ECF No. 1-1 at PageID #29.  Thus, *Ross* specifically alleges that Anenberg's conduct was "unreasonable and negligent" and that "in the exercise of reasonable diligence, [Anenberg] should have known that his conduct would cause injury and harm to [Ross]."  *Id.*  And, factually, although paragraph eight alleges voluntary acts (i.e., not mistaken) by Anenberg in trying to enter the dressing area even after Ross told him not to come in, and alleges that he "engaged in assaultive conduct by

rummaging, feeling and grabbing the curtain," *id.* at PageID #25, it is still possible that Anenberg did not specifically intend to harm Ross at that time.[3]

This possibility is supported by "a good-faith analysis of all information [now] known to the insured or all information reasonably ascertainable by inquiry and investigation." *Dairy Road Partners*, 92 Haw. at 414-15, 992 P.2d

---

[3] Under Hawaii law, "when insurance policies contain exclusions for intentional conduct and expected injuries, those exclusions are limited." *Weight*, 782 F. Supp. 2d at 1128. In this context, "[i]ntent means 'volitional performance of an act with an intent to cause injury, although not necessarily the precise injury or severity of damage that in fact occurs.'" *Id.* (quoting *Tri-S Corp. v. Western World Ins. Co.*, 110 Haw. 473, 494 n.8, 135 P.3d 82, 103 n.8 (2006)). "Intent can be proved by 'showing an actual intent to injure, or by showing the nature and character of the act to be such that an intent to cause harm to the other party must be inferred as a matter of law.'" *Id.* (quoting *Tri-S Corp.*, 110 Haw. at 494 n.8, 135 P.3d at 103 n.8). And "[i]njuries that result from 'negligent and reckless conduct' are not 'expected injuries' under *Tri-S Corp.*" *Id.*

In examining whether injury is "expected," some question remains whether the answer is determined subjectively or objectively, i.e., whether the alleged tortfeasor subjectively expected harm to occur to a victim, or, objectively, whether the tortfeasor would reasonably have expected harm to occur. In *Tri-S Corp.*, the Hawaii Supreme Court adopted a subjective standard when analyzing an exclusion for "expected or intended injury." *See* 110 Haw. at 494 n.8, 135 P.3d at 103 n.8 ("'Expected' injury means injury that occurred when the insured acted even though he was consciously aware that harm was practically certain to occur from his actions," *which is "determined by examination of the subjective mental state of the insured."*) (quoting *Sans v. Monticello Ins. Co.*, 676 N.E.2d 1099, 1102 (Ind. Ct. App. 1997)) (emphasis added).

*Tri-S Corp.*, however, examined an exclusion for damage that read "expected or intended *from the standpoint of the insured*," 110 Haw. at 480, 135 P.3d at 89 (emphasis added), suggesting a subjective standard. In contrast, the exclusion at issue here excludes coverage for acts that were "intended to result in, or would be expected *by a reasonable person* [to result in personal injury]," ECF No. 26-8 at PageID #338 (emphasis added), suggesting an objective standard.

Here, however, the standard is not dispositive. At the hearing, Anenberg disclaimed the argument that he was entitled to coverage on the ground that he *subjectively* did not believe he was harming Ross. He argued instead that there is a potential for coverage even when viewing the circumstances objectively, given the allegations of the underlying complaint and the evidence —construed in his favor—suggesting a reasonable belief that he would not have expected to harm Ross (at least in the time frame described in paragraph eight, before he changed his shirt). And the court agrees with that analysis.

at 109-10.  The security video establishes that Anenberg acted voluntarily, but (especially without audio) does not rule out the possibility that he did not expect to cause harm to *Ross*, at least before he changed his shirt.  The evidence available— viewed in the light most favorable to Anenberg—could support Anenberg's theory that, because Ross sounded like she was joking, Anenberg did not intend or expect to harm her at that time.  Ross testified that she was "trying to laugh it off and make a joke" when she said "you don't want to spoil your breakfast" and "kind of giggl[ing]" said "guys, enjoy your day, by, like have a good . . . day, you know, enjoy your birthday kind of thing[.]"  ECF No. 37-3 at PageID #542.[4]  Even if Ross's comments were meant to diffuse an inexcusable situation, it's possible that Anenberg could have interpreted them such that he did not expect to harm her (and that possibly she was, in fact, not harmed).

At this summary judgment stage, even viewed objectively, the court cannot say it is *impossible* for a factfinder in *Ross* to interpret the events alleged in the *Ross* complaint in Anenberg's favor.  *See Dairy Road Partners*, 92 Haw. at 412-13, 992 P.2d at 107-08.  And this is so even though the court considers paragraph *nine* to allege intentional acts that would necessarily be expected to

---

[4] Carol Anenberg (Defendant's wife) submitted a declaration that is consistent with Ross's testimony.  Carol Anenberg states that "[Ross] was giggling and laughing, and so was I," and "[i]n a friendly and a light-hearted voice, [Ross] told us to enjoy our day and my husband's birthday," and later "[Ross] was giggling and again told us in a friendly and light-hearted tone to have a good celebration."  ECF No. 37-1 at PageID #536-37.

cause harm (that is, would be excluded from coverage by the intentional acts exclusion). It's certainly possible for a jury in *Ross* to find Anenberg liable for *both* NIED *and* intentional torts based on different actions.

In sum, reading the exclusion narrowly, *see Gemini Ins. Co*, 360 F. Supp. 3d at 1068, the court cannot conclude that it necessarily provides a basis for AIG to refuse to defend Anenberg at this stage. *See, e.g.*, *Allstate Ins. Co. v. Gadiel*, 2008 WL 4830847, at *6 (D. Haw. Nov. 7, 2008) ("[S]o long as there is a question of fact as to [the insured's] intent, there is a corresponding question of fact as to whether these actions are covered by the intentional acts exclusion. . . . Here, at least some of [the underlying] legal claims, including . . . negligent infliction of emotional distress, do not require such intent and, therefore, potentially fall beyond the scope of the exclusion.").[5]  And defending as to count four of *Ross* requires AIG to defend the entire suit. *See, e.g.*, *Burlington Ins. Co*., 383 F.3d at 944.

### 2.   The "Sexual molestation" and "Sexual misconduct" Exclusions

The homeowners policy excludes coverage for:

> **Personal injury** arising out of any actual, alleged or threatened by any person:

---

[5] Likewise, the clause "[t]his exclusion applies even if the injury or damage is of a different kind or degree . . . than expected or intended," does not bar a duty to defend. It's possible that a factfinder in *Ross* could find that Anenberg had not intended to cause any injury—i.e., that the injury was *not* "of a different kind or degree . . . than expected or intended."

          **a**.      Sexual molestation, misconduct or
                      harassment;

          **b**.      Corporal punishment; or

          **c**.      Sexual, physical or mental abuse.

ECF No. 26-8 at PageID #337.  The policy, however, does not define the terms

"sexual molestation, misconduct or harassment," or "sexual, physical or mental

abuse."

          As with the intentional acts exclusion, when read narrowly, this

exclusion provides no basis for AIG to refuse to defend Anenberg in the *Ross*

action at this stage.  The underlying complaint does not allege any sexually-based

torts or causes of action.  It does not mention the words "sexual" or "sex" at all.

Nor does it use the term "harassment" or "sexual harassment."  Although it's

possible to assume that Anenberg had some sort of sexual motivation for his

alleged actions against Ross, neither the underlying complaint nor any of the other

information (the video or discovery from *Ross*) indicate that he must be liable *only*

for sexual misconduct.  That is, it is certainly possible that he committed other torts

(e.g., NIED, intentional infliction of emotional distress, fraud) that would not

constitute "sexual molestation, misconduct, or harassment"—and thus would not

be excluded from coverage.  Again, the duty to defend arises when there is a mere

*potential* for indemnification liability, and the sexual misconduct exclusion does not eliminate that potential here.[6]

## C.    Duty to Indemnify

Finally, having determined that AIG owes a duty to defend Anenberg against the *Ross* action, the court agrees with Anenberg that a determination of AIG's ultimate duty to indemnify should await the conclusion of *Ross*.  *See, e.g.*, *Weight*, 782 F. Supp. 2d at 1131 ("[The insurer's] duty to defend depends on the *possibility* that [the insured] will incur liability on a covered claim.  That possibility exists, so [the insurer] must defend [the insured].  Yet there are genuine issues of material fact as to whether [the insurer] must indemnify [the insured], because the possibility is just that."); *Allstate Ins. Co. v. Davis*, 430 F. Supp. 2d 1112, 1127 (D. Haw. 2006) ("Unlike the duty to defend . . . which must be based solely on the allegations in the underlying complaint or suitable conclusive extrinsic evidence, the duty to indemnify must be determined by whether actual liability of the insured may be established at trial considering all available evidence."); *Gemini Ins. Co.*, 360 F. Supp. 3d at 1071 ("'The duty to indemnify does not arise until liability is determined.'") (quoting *Kaiser Found. Health Plan*,

---

[6] The same analysis applies to the "sexual misconduct" exclusion in the excess liability policy.  Although it's possible that Anenberg could be liable for "sexual misconduct," it is also certainly possible that he might not be—other torts are alleged.  Even if the exclusion might apply, that is not enough for AIG to lack a duty to defend.

*Inc. v. Hawaii Life Flight Corp.*, 2017 WL 1534193, at *22 (D. Haw. Apr. 27, 2017)) (other citations omitted).  For example, a factfinder in *Ross* could conclude that Anenberg indeed intended to cause injury to Ross, or that he should have expected the full extent of her injury—in which case the intentional acts exclusion would preclude indemnification.

Accordingly, the court denies without prejudice AIG's motion to the extent it seeks only to determine its duties to indemnify Anenberg for covered losses incurred in *Ross*.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, the motions are GRANTED in part and DENIED in part.  AIG's Motion for Summary Judgment, ECF No. 25, is granted as to punitive damages, but is otherwise DENIED.  Anenberg's Counter-Motion

///

///

///

///

///

///

for Partial Summary Judgment, ECF No. 36, is GRANTED—Anenberg is entitled

to a declaration that AIG owes him a defense of *Ross*.  Questions regarding AIG's

duty to indemnify are premature.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 11, 2020.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*AIG Property & Cas. Co. v. Anenberg*, Civ. No. 19-00679 JMS-WRP, Order Granting in Part and Denying in Part Cross-Motions for Summary Judgment, ECF Nos. 25 & 36